[No. 4268-1. Division One. May 23, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT JAMES HARSTAD, ET AL, *Appellants.*

*James R. Short, Richey & Hohlbein,* and *Jack A. Richey,* for appellants (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Gregory P. Canova, Deputy,* for respondent.

JAMES, J.—At jury trial, Penelope Grey and Robert Harstad were found guilty of second–degree murder. The jury returned special verdicts finding that each was armed with

a firearm. Grey contends that there was insufficient evidence upon which to convict her as an aider and abettor. Grey and Harstad contend that they were prejudiced by the trial judge's restriction of their exercise of peremptory challenges, that they were prejudiced when the trial judge permitted the State to impeach its own witness without a showing of surprise or prejudice, that they were prejudiced by the introduction into evidence of many gruesome photographs of the deceased, and that they were prejudiced when the trial judge denied their motion for a mistrial based upon witness misconduct. We affirm.

The State stipulated to the fact that Penelope Grey was raped by Nolan Favel, the subsequent victim of the homicide, at approximately 3 a.m. on March 29, 1975, on the grounds of Ballard High School in Seattle.

Grey testified that following the rape, she proceeded on foot to a woman friend's home located approximately 1 1/2 miles distant; that upon approaching the home, the rapist again accosted her; and that, fearing for her life, she took a gun from her purse and shot him five times. She said that the gun belonged to Harstad and that he had given it to her earlier that night.

Robert Harstad's testimony was as follows: Early that morning, he received a telephone call from Grey. She was hysterical. She told him she had been raped. He drove to her friend's home. While attempting to calm her, he learned that she shot the rapist. Together they went to the scene of the shooting. The rapist was dead. They drove to the home where Harstad had been staying. While there, in attempting to further calm her, Harstad told Grey to tell his friends that he shot the rapist. Harstad and Grey did not call police. He took the gun from her and later they buried it in a cemetery. Harstad admitted that the gun was his. He explained that he gave it to Grey because he was an ex–convict who was not permitted by law to carry a gun.

The State's case was based primarily upon admissions by Grey and Harstad to prosecution witnesses. These witnesses, who were acquainted with Grey and Harstad, testified to having been told by them that he went looking for the rapist, she pointed him out, and he shot him five times. Grey's friend, in whose home she sought refuge following the rape, testified that Grey told her that the rapist walked her to the house and that although she had a gun, she did not use it because she was afraid. Another witness, who answered the phone when Grey called Harstad, testified that he asked her where the rapist was and she replied that he was walking down the street. Another friend testified that upon their return to the home that morning, Harstad told him that he shot the rapist. He added that he heard Harstad ask Grey why she did not shoot the rapist and she replied that she was afraid to do so. Another friend testified that sometime after the shooting, Harstad asked her how she knew about the shooting. He subsequently told her that Grey pointed out the man to him and he cornered him in a yard and shot him. Another friend testified that Grey gave her a list of names of people to contact to tell them to tell police, if asked, that Grey killed the rapist. Grey told her that she was going to try to beat the rap by pleading self-defense. A police detective testified that Grey first told him that she shot the rapist once. When confronted with the fact that he had been shot five times, she stated that she later returned and shot him four more times. Two witnesses who were awakened by shots that morning testified that the shots occurred together.

Grey contends that there was insufficient evidence that she aided and abetted Harstad in committing either first-degree murder (with which they were charged) or second-degree murder (of which the jury convicted them). She argues that the trial judge therefore erred when he denied her motion to dismiss at the close of the State's case. We do not agree.

We find that there is substantial evidence that Grey aided and abetted Harstad in shooting the rapist. That is,

the State introduced substantial evidence indicating that Grey's role in the shooting was more than just being passively present. There is evidence that she encouraged him in committing the crime. She, of course, had a strong revenge motive. Following the rape, she did not call police. She called Harstad. The rapist was not acquainted with Harstad; she had to identify him. She had the gun; he had to obtain it from her. There was no testimony at trial from the State's witnesses that she had admitted having to discourage Harstad from shooting the rapist. They buried the gun. There was evidence that she encouraged a cover–up to conceal Harstad's role in the crime. The State presented a prima facie case sufficient to go to the jury.

Harstad and Grey contend that each should have been afforded seven peremptory challenges instead of being restricted to a total of eight. We do not agree.

CrR 6.4(e)(1) provides in part:

In prosecutions for capital offenses the defense and the state may challenge peremptorily twelve jurors each; in prosecution for offenses punishable by imprisonment in a penitentiary six jurors each; in all other prosecutions, three jurors each. *When several defendants are on trial together, each defendant shall be entitled to one challenge in addition to the number of challenges provided above,* with discretion in the trial judge to afford the prosecution such additional challenges as circumstances warrant.

(Italics ours.) The plain meaning of this rule is that the defense (as opposed to the defendant or each defendant) is entitled to six peremptory challenges for an offense punishable by imprisonment in the penitentiary. In a multiple–defendant trial, as we have here, each defendant may claim an additional challenge. The trial judge correctly ruled that Grey and Harstad could exercise a total of eight peremptory challenges. *State v. Allan,* 88 Wn.2d 394, 562 P.2d 632 (1977).

Harstad and Grey next contend that they were prejudiced when the trial judge permitted the State to impeach

its own witness without a showing of surprise or prejudice. We do not agree.

The prosecution witness had been present in the home with Harstad at the time Grey called Harstad to tell him that she had been raped. This was prior to the time that Harstad and Grey allegedly made up the story that Harstad shot the rapist. The prosecutor asked the witness what Harstad said to him after the call.

A He asked me if I wanted to go with him, that he was going over to pick her up.

Q Did he say what else he was going to do?

A No.

Q Did he make any reference to the person who had raped Penny?

A Not that I recall at that time.

The prosecutor then asked the witness whether he recalled giving a statement to police in Alaska. The witness responded affirmatively. He showed the witness the statement to refresh the witness' recollection and asked,

Q Now do you remember Robert Harstad mentioning anything about where he was going to go or what he was going to do?

A Yeah. That, you know, I don't know why I said that the way I have it there because at the time he told me that he was going over to a friend of Penny's house and pick her up, you know, and get her, you know, and I don't really remember him saying anything about, you know, finding the guy at that time. You know, all he was interested was getting over there and seeing her at that time.

Q Did he ask you if you wanted to go along?

A Yeah.

Q Did you tell the police that he said that?

At this point, counsel for both defendants objected on grounds of no proper foundation and no showing of surprise. The trial judge overrruled their objections. The prosecutor then asked whether the witness told police in Alaska that Harstad wanted him to go along to find the rapist. The witness responded:

No, I don't think so. I said, you know, I was talking to a tape, you know, and the guy talked to me and I told him, you know, just, you know, pretty much what happened, you know. He asked me did I want to go with him, you know. I might, I might have said "To find the guy." I might assume that that's what he said but, you know, he distinctly told me that he was going to pick her up, you know. I remember that.

■ The State may impeach its own witness only upon a showing of surprise or prejudice. That is, the witness must affirmatively state some admissible evidentiary fact favorable to the defense or damaging to the prosecution which calls for impeachment to contradict the damage. *State v. Delaney,* 161 Wash. 614, 297 P. 208 (1931). As in *Delaney,* the witness here did not affirmatively state an evidentiary fact damaging to the prosecution. He merely stated that he did not recall that Harstad asked him to go and find the rapist. The prosecutor clearly expected him to testify that Harstad had asked him to go and find the rapist. He was surprised that he did not and was entitled to treat him as a hostile witness and cross–examine him as to whether the witness made the statement to police. *State v. Delaney, supra.* This testimony would lend support to the State's circumstantial case—namely, that the rapist was alive when Grey called Harstad that morning. In view of the nature of the witness' testimony, the prosecutor quite properly did not seek to introduce the statement into evidence. *State v. Delaney, supra.* There was no error.

Harstad and Grey next contend that they were prejudiced by the introduction into evidence of many gruesome photographs of the deceased. We do not agree.

■ It is correct to state that gruesome photographs designed primarily or solely to arouse the passions of the jury against a defendant are not admissible. The test to apply to any given case is one of balancing the probative value of the photographs against their prejudicial effect. The trial judge necessarily is vested with discretion to determine whether photographs are admissible. We will reverse only upon abuse of discretion. *State v. Adams,* 76

Wn.2d 650, 458 P.2d 558 (1969). We have examined the photographs and find no abuse of discretion. They demonstrate the position of the body when found by police. They demonstrate the bullet wounds. Two of the autopsy photographs were objected to only by Harstad on the ground that they were duplicitous. They were taken from different angles to show a wound to the skull area as testified to at trial in reference to the cause of death. The photographs were not particularly gruesome and do not appear to have been introduced primarily for shock value.

Grey and Harstad finally contend that the trial judge should have declared a mistrial by reason of witness misconduct. Following their defense testimony, the State's rebuttal witness, upon leaving the witness stand, began to cry and suddenly ran over to and embraced Grey, pleading with her to tell the truth. She finally stated, "I'm so sorry," and was escorted from the courtroom. This occurred within 5 feet of the jury. Harstad objected and moved for a mistrial. Grey did not. For reasons not apparent from the record, the trial judge did not observe the incident. He denied the motion.

█ The act of this witness was exceedingly unfortunate. However, the nature of the evidence against Harstad and Grey was so overwhelming that we conclude that beyond a reasonable doubt, the error was harmless. There was no prejudice.

The judgment is affirmed.

CALLOW and ANDERSEN, JJ., concur.

Petition for rehearing denied August 9, 1977.

Review denied by Supreme Court January 20, 1978.